# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NINA BAILEY, | Case No. 1:19-cv-01313-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |

## I.     INTRODUCTION

On September 18, 2019, Plaintiff Nina Bailey ("Plaintiff") filed a complaint under 42 U.S.C. § 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 6, 9.)

## II.     BACKGROUND

Plaintiff was born on March 22, 1965, completed high school, and previously worked as a sales associate and an in-home caregiver. (Administrative Record ("AR") 31, 49–50, 76, 85, 102, 221, 224, 235, 257, 293, 337.) Plaintiff protectively filed a claim for SSI payments on February 28, 2015, alleging she became disabled on July 1, 2013, due to sciatica, pinched nerves, bone spurs, carpal tunnel, chronic migraines, depression, memory loss, and insomnia. (AR 23, 85, 86, 92, 102, 123, 221, 234, 235, 293, 337, 436, 473, 479, 484, 489, 516.) Additional impairments alleged include anxiety and bipolar disorder. (AR 26, 27, 64, 65, 93.)

### A.     Relevant Medical Evidence[2]

On June 26, 2015, psychologist Michael Cohn, Ph.D. prepared a report of his psychiatric examination of Plaintiff.[3] (AR 491–94.) In his report, Plaintiff stated that she can take care of personal hygiene tasks, including dressing and bathing without difficulty. (AR 491.) She is able to pay bills, handle cash appropriately, and go out alone without difficulty. (AR 491.) Plaintiff reported her relationships with family and friends is "fair." (AR 491.) She has no difficulty completing household tasks or making daily decisions. (AR 491.) Plaintiff reported that on a daily basis, she wakes up, performs personal hygiene tasks, watches television, cooks, does chores and housecleaning, watches television, shops, uses the computer, eats, and sleeps. (AR 491.) Dr. Cohn found Plaintiff "fully cooperative with all examination procedures" and that she "was able to volunteer information spontaneously." (AR 491.)

Plaintiff's mental status examination was normal. (AR 491–93.) Dr. Cohn found no evidence of anxiety or depression and deemed her psychiatric prognosis good. (AR 493.) He also concluded that Plaintiff had no significant mental limitations. (AR 493–94.)

### B.     Plaintiff's Daughter's Statements

Plaintiff's daughter Wendi Mendoza completed third-party adult function reports on May 28, 2015 (AR 243–56) and December 9, 2015 (AR 326–36). Ms. Mendoza reported that the carpal tunnel in Plaintiff's hands cause them to go numb and that she cannot hold things for too

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issue.

[3] The first page of the report is missing from the Administrative Record.

long or open things.  (AR 243.)  Plaintiff' also has pain in her back and bad knees, causing her to limp and sometimes fall.  (AR 243, 326.)  According to Ms. Mendoza, during a typical day Plaintiff takes her daughter to school and performs household chores, including washing dishes, folding clothes, vacuuming, and helping Ms. Mendoza with her son.  (AR 244, 327.)  Ms. Mendoza reported that sometimes she will help Plaintiff with cooking or laundry when Plaintiff has pain, and that Plaintiff cannot wash heavy pots and pans.  (AR 244, 245.)  Plaintiff can shop in stores, but it takes her longer due to knee pain.  (AR 246.)  According to Ms. Mendoza, Plaintiff cannot sit on the floor, dance, lift, stand for too long or go on long walks, and uses a knee brace every other day when her knee hurts.  (AR 247, 327.)  Ms. Mendoza reported Plaintiff can only walk a mile, cannot kneel, and has trouble bending down.  (AR 247, 248.)

According to Ms. Mendoza's first function report, Plaintiff can follow instructions most of the time, but sometimes gets confused or needs help remembering.  (AR 248.)  Ms. Mendoza's second function report states that Plaintiff does not follow instructions well.  (AR 331.)  Although Ms. Mendoza originally reported that Plaintiff does not need any reminders (AR 245), she later stated that Plaintiff needs reminders to take her medication.  (AR 326.)  Ms. Mendoza's first function report indicated Plaintiff handled stress "OK" (AR 249), but the subsequent report indicated that Plaintiff has difficulty handling stress and gets overwhelmed.  (AR 332.)

**C.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on August 6, 2015, and again on reconsideration on January 27, 2016.  (AR 123–34.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 135–52.)

On October 3, 2017, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 47–73.)  Plaintiff testified that she has pain in her back that she treats every day with a TENS unit.  (AR 54–55.)  She also testified her knees cause her to limp (AR 65.)  According to Plaintiff, she does not want to be around people and has anxiety attacks.  (AR 64, 69.)  A vocational expert ("VE") also appeared and testified at the hearing.  (AR 73–82.)

**D.     The ALJ's Decision**

In a decision dated April 19, 2018, the ALJ found that Plaintiff was not disabled, as

defined by the Act. (AR 23–32.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 25–32.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since February 28, 2015, the application date (step one). (AR 25.) At step two, the ALJ found Plaintiff's following impairments to be severe: carpal tunnel syndrome, lumbar spine degenerative disk disease, and knee osteoarthritis. (AR 25–28.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 28.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform medium work as defined in 20 CFR [§] 416.967(c) except she can frequently climb ramps, stairs, ladders, ropes, and scaffolds; she can frequently crawl, crouch, kneel, and stoop; and she should not work in environments exposing them to unprotected heights or machinery with moving, mechanical parts.

(AR 28–31.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" he rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 29.)

Based on the RFC assessment, the ALJ found that Plaintiff was able to perform her past relevant work as a sales attendant and a home attendant (step four). (AR 31–32.) In making this determination, the ALJ posed a hypothetical to the VE based upon Plaintiff's RFC. (AR 75–76.)

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

In response, the VE testified that a person with the specified RFC could perform Plaintiff's past work. (AR 75–76.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on July 15, 2019. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III. LEGAL STANDARD

#### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).  "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).  "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999).  Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more

1 than one rational interpretation, the court may not substitute its judgment for that of the
2 Commissioner." (citations omitted)).

3 In reviewing the Commissioner's decision, the Court may not substitute its judgment for
4 that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court
5 must determine whether the Commissioner applied the proper legal standards and whether
6 substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v.*
7 *Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot
8 be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d
9 at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must
10 'consider the record as a whole, weighing both evidence that supports and evidence that detracts
11 from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th
12 Cir. 1993)).

13 Finally, courts "may not reverse an ALJ's decision on account of an error that is
14 harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc.*
15 *Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear
16 from the record that 'the ALJ's error was inconsequential to the ultimate nondisability
17 determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v.*
18 *Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is
19 harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*,
20 556 U.S. 396, 409 (2009) (citations omitted).

## IV.    DISCUSSION

22 Plaintiff contends that the ALJ committed harmful error in three ways: by failing to
23 provide the necessary background information to consultative examiner Dr. Cohn; by failing to
24 evaluate properly the lay testimony of Plaintiff's daughter; and by failing to develop the record
25 by refusing to issue a subpoena for Plaintiff's updated medical records. (*See* Doc. 19.)

### A.    Dr. Cohn's Opinion

27 Plaintiff asserts that the ALJ erred at step two by assigning weight to examining
28 psychologist Dr. Cohn's opinion to determine that Plaintiff's mental impairments were not severe

7

because Dr. Cohn "did not review or have access to Plaintiff's medical records." (Doc. 19 at 10–12.)

The Social Security regulations state that consultative examiners must be provided with "any necessary background information" concerning a claimant's condition. 20 C.F.R. §§ 404.1517, 416.917. Plaintiff asserts that violation of this regulation constitutes reversible error and cites several cases in support. (*See* Doc. 19 at 11.) However, in each of those cases where the court found error, the court also concluded that the consultative examiner did not have all of the "necessary background information" for the plaintiff.[5]

The record is silent as to whether Dr. Cohn had access to Plaintiff's medical records. Dr. Cohn's report is missing its first page, which, as Plaintiff concedes in her reply brief, is the page that would contain a statement indicating whether he received background information and what was reviewed. (*See* Doc. 23 at 2.) Plaintiff asserts that "the context of Dr. Cohn's report clearly indicated that he did not review any records" (id. at 23), but this is mere speculation based on Dr. Cohn's opinion that Plaintiff does not suffer from a mental disorder. While Plaintiff may disagree with this opinion, there is no evidence that it was made without access to Plaintiff's medical records in violation of § 416.917. The Court therefore finds no error with this issue. *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). *See also Proctor v. Comm'r of Soc. Sec. Admin.*, No. CV-19-05503-PHX-MTL, 2020 WL 6796767, at *5 (D. Ariz. Nov. 19, 2020) (no violation of § 404.1517 where record was silent on whether medical records were provided to the consultative examiner).

---

[5] *See Turk v. Berryhill,* No. 2:17-CV-00767 AC, 2018 WL 3363738, at *6 (E.D. Cal. July 10, 2018) ("In completing his consultative exam, Dr. Van Kirk apparently did not review plaintiff's medical records."); *Poole v. Astrue*, No. 2:11-CV-00912-KJN, 2012 WL 3862519, at *7 (E.D. Cal. Sept. 5, 2012) ("However, it is significant that Dr. Richwerger had no access to plaintiff's prior records concerning her mental retardation."); *Jackson v. Astrue*, No. CIV S-10-2401 EFB, 2012 WL 639304, at *4 (E.D. Cal. Feb. 24, 2012) (citing medical records "which were not provided to examining physician for review"); *Valle v. Astrue*, No. CV 08-4389-MAN, 2010 WL 669100, at *7 (C.D. Cal. Feb. 23, 2010) ("Critically, in his report, Dr. Gwartz noted that "[t]here were no medical records available for review.'"); *Peacock v. Comm'r of Soc. Sec. Admin.*, No. CV-17-00523-PHX-BSB, 2018 WL 2753151, at *6 (D. Ariz. June 8, 2018) ("The parties do not dispute that Dr. Cunningham was not provided with Plaintiff's medical records."); *Ladue v. Chater*, No. C-95-0754 EFL, 1996 WL 83880, at *5 (N.D. Cal. Feb. 16, 1996 ("Prior to his examination of plaintiff, Dr. Mehta was provided with only one progress note from Kaiser which mentioned plaintiff's asthma and her arthritic condition.")

### B.     Plaintiff's Daughter's Statements

Plaintiff contends that the ALJ failed to provide germane reasons for rejecting the testimony of lay witness Wendi Mendoza, her daughter.  The Court disagrees.

Ms. Mendoza reported in third-party adult function reports that Plaintiff's carpal tunnel cause her hands to go numb and that she cannot hold things for too long or open things.  (AR 243.)  She reported that Plaintiff has pain in her back and bad knees, causing her to limp and sometimes fall.  (AR 243, 326.)  According to Ms. Mendoza, Plaintiff cannot sit on the floor, dance, lift, stand for too long or go on long walks, and uses a knee brace every other day when her knee hurts.  (AR 247, 327.)  Ms. Mendoza reported Plaintiff can only walk a mile, cannot kneel, and has trouble bending down.  (AR 247, 248.)  She stated that Plaintiff does not follow instructions well and needs reminders to take her medication.  (AR 331.)  According to Ms. Mendoza, Plaintiff has difficulty handling stress and gets overwhelmed.  (AR 332.)

The ALJ assigned Ms. Mendoza's statements "little weight," observing that "[w]hile a layperson can offer an opinion on the severity of the claimant's symptoms in relationship to the claimant's ability to work, the opinion of a layperson is far less persuasive on those same issues than are the opinions of medical professionals as relied on herein."  (AR 31.)  The ALJ also offered this assessment of Ms. Mendoza's statements:

> The undersigned considered these statements about the claimant's physical and mental limitations and adopted appropriate limitations.  Indeed, Ms. Mendoza indicated that the claimant cares for her daughter and performs household chores, which is consistent with the residual functional capacity at the medium exertional level.  However, the assertions of the claimant's daughter regarding the claimant's limitations are not persuasive of additional restrictions in the residual functional capacity, as the clinical or diagnostic medical evidence does not support her statement.

(AR 31.)

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)); *see also* 20 C.F.R. § 416.913(a)(4).  Friends and family members in a position to observe symptoms and activities are competent to testify as to a claimant's condition.  *See Diedrich v. Berryhill*, 874

9

1 F.3d 634, 640 (9th Cir. 2017). Such testimony "cannot be disregarded without comment." *Bruce*, 557 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)); *Robbins*, 466 F.3d at 885 ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings."). When rejecting lay witness testimony, an ALJ must give specific reasons germane for discounting the testimony. *Valentine*., 574 F.3d at 694.

The ALJ's reasoning that Ms. Mendoza's lay opinions were "far less" persuasive than the opinions of the medical professionals, is legally deficient. (AR 31). Friends and family members who are in a position to observe a claimant's symptoms and daily activities are deemed to be competent to testify as to those symptoms and activities. *See Diedrich*, 874 F.3d at 640; *Dodrill v. Shalala*, 12 F.3d 915, 919-19 (9th Cir. 1993). Third parties need not have medical training, and their statements do not contain diagnosis or medical findings because the very purpose of third-party testimony is to obtain the lay witness's subjective impression of claimant's abilities and limitations. Thus, the ALJ improperly discounted the statements for this reason. *See Stevens v. Comm'r of Soc. Sec.*, Case No. 1:19-cv-00428-NONE-SAB, 2020 WL 5036454, at *23 (E.D. Cal. Aug. 26, 2020) (Rejecting lay witness statements for lack of medical training "defeats the very purpose of obtaining statements that describe a third party's observations of a claimant, as '[l]ay witnesses are not required to indicate whether their observations of the claimant's behavior stem from medically necessary limitations, as this would run counter to the purpose of considering lay testimony.'") (quoting *Alo v. Berryhill*, 766 F. App'x 512, 515 (9th Cir. 2019)); *Hicks v. Colvin,* No. 2:15-cv-0978 AC, 2016 WL 5395945, at *10 (E.D. Cal. Sept. 27, 2016) (lay witnesses' lack of medical training was not a valid reason for rejecting testimony). *See also Bruce*, 557 F.3d at 116 (ALJ erred when rejecting third party testimony on grounds that third party was not able to identify whether limitations were "medically necessary").

A lack of support from the "clinical or diagnostic medical evidence" is also not a proper basis for disregarding law witness observations. *Diedrich*, 874 F.3d at 640 (quoting *Bruce*, 557 F.3d at 1116 ("Nor under our law could the ALJ discredit [the witness's] lay testimony as not supported by medical evidence in the record.")). That lay testimony and third-party function reports may differ from medical records alone "is precisely why such evidence is valuable at a

hearing." *Diedrich*, 874 F.3d at 640; *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (ALJ erred by rejecting testimony of claimant's family members about claimant's symptoms because medical records did not corroborate those symptoms); *V.G. by & through Guzman v. Saul*, Case No. 1:18-cv-00889-JLT, 2019 WL 4635647, at *8 (E.D. Cal. Sept. 24, 2019) ("[A]n ALJ may not reject the statements of lay witness only upon the grounds that the 'medical records did not corroborate' the symptoms alleged.")

The ALJ's failure to evaluate the lay opinion testimony, however, is harmless. Ms. Mendoza's observations are substantially similar to Plaintiff's subjective complaints concerning her physical symptoms and limitations. (*Compare* AR 273 *with* AR 243 (reporting Plaintiff's carpal tunnel causes her hands to go numb and she cannot hold things for too long); AR 273 *with* AR 243, 326 (reporting Plaintiff has pain in her back and bad knees, causing her to sometimes fall); AR 318 *with* AR 331 (reporting Plaintiff is limited in her ability to lift, squat, bend, stand, walk, sit, and kneel); AR 278 *with* AR 248 (reporting Plaintiff sometimes gets confused following instructions); AR 319 *with* AR 332 (reporting Plaintiff has difficulty handling stress).) Plaintiff has not challenged the ALJ's determination that she is not fully credible and the ALJ's reasons for rejecting that testimony (inconsistent with medical evidence, lack of compliance with treatment, conservative treatment, improvement with treatment, *see* AR 26, 29–31) apply with equal force to Ms. Mendoza's testimony. *See Valentine*, 574 F.3d at 694 (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's testimony]"); *Molina*, 674 F.3d at 1115 (error in failing to address lay testimony found harmless where ALJ "gave reasons for rejecting [the claimant's] testimony regarding her symptoms that were equally relevant to the similar testimony of the lay witnesses, and that would support a finding that the lay testimony was similarly not credible.").

Accordingly, the ALJ did not err in rejecting the lay witness statements of Ms. Mendoza.

**C.    Plaintiff's Subpoena Request**

Finally, Plaintiff contends that the ALJ's denial of her post-hearing request to issue a

subpoena for records from provider St. Thomas Emergent Services constituted "legal error."[6] (Doc. 19 at 17–18.)  However, "[a]n ALJ's denial of a subpoena is reviewed for ***abuse of discretion***." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citing *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983) (emphasis added).  Here, the ALJ did not abuse his discretion in denying Plaintiff's request to issue a subpoena to the provider based on his finding that she did not satisfy the requirements of § 416.1435(b).  Under the regulations, "[w]hen it is reasonably necessary for the full presentation of a case" a party may request that the ALJ issue subpoenas "for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing." 20 C.F.R § 416.1450(d)(1).  However, to obtain such a subpoena, a party "must file a written request for the issuance of a subpoena with the administrative law judge . . . at least 10 business days before the hearing date, unless [the party] show[s] that [their] circumstances meet the conditions described in § 416.1435(b)" that prevented them from making such request.  20 C.F.R. § 416.1450(d)(2).

Here, Plaintiff made her request for a subpoena after the hearing, which was held on October 3, 2017.[7]  (AR 370.)  She therefore did not meet the regulatory requirement that such requests be made "at least 10 business days before the hearing date," and the ALJ found that she did not meet the conditions set forth in § 416.1435(b).  (*See* AR 23.)  Plaintiff asserts that, contrary to the ALJ's finding, she satisfied the requirements of § 416.1435(b) because she "actively and diligently sought evidence from a source," namely St. Thomas Emergent Services, but "the evidence was not received . . . prior to the hearing.  However, the plain language of §

---

[6] Plaintiff does not point to any authority either entitling a claimant to make a post-hearing request for, or requiring an ALJ to consider issuing, a post-hearing subpoena. Instead, Plaintiff characterizes the ALJ's purported error as a failure by the ALJ to develop the record. (Doc. 19 at 17–18.) Even setting aside the controlling issue of whether the ALJ abused his discretion in rejecting Plaintiff's subpoena request, discussed below, the ALJ did not fail to develop the record. At Plaintiff's counsel's request (AR 376), and as discussed at the hearing (AR 41–43), the ALJ agreed to keep the record open for 30 days after the hearing to allow counsel additional time to obtain additional records from St. Thomas Emergent Services. The ALJ therefore satisfied his duty. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (ALJ may discharge duty to develop the record by "keeping the record open after the hearing to allow supplementation of the record."). *See also Alcazar v. Astrue*, No. CV 12-4494 AGR, 2013 WL 645622, at *3 n.2 (C.D. Cal. Feb. 21, 2013) ("The ALJ kept the record open for Alcazar to submit additional treatment records. The ALJ thereby satisfied his duty to develop the record.") (internal citations omitted).

[7] How long after the hearing that Plaintiff made her request is unknown: the request is dated September 20, 2017, prior to the hearing, but its text indicates that the hearing had already taken place. (*See* AR 370 ("As you are aware, I represent the Claimant, Nina Griffith, in the aforementioned matter ***which was heard before Your Honor on l0/3/2017***.") (emphasis added).)

12

416.1435(b) involves the process for submitting evidence to the ALJ, not that for seeking a subpoena. Within the context of seeking a subpoena, by virtue of the cross-reference in § 416.1450(d)(2), that language must be read accordingly. *See Ford*, 950 F.3d at 1158 (in reviewing denial by the ALJ of a subpoena request, reading language excusing the claimant from the deadline for submitting evidence to the ALJ to apply instead to the deadline for requesting a subpoena). Thus, in this context, § 416.1435(b) requires that Plaintiff establish the existence of "unusual, unexpected, or unavoidable circumstance beyond [her] control" that prevented her from seeking a subpoena from the ALJ, and the example of this set forth in § 414.1435(b)(3)(iv), cited by Plaintiff, requires her to have "actively and diligently" sought the subpoena. This Plaintiff did not do.

The record shows that for nearly two months, commencing on July 31, 2017, Plaintiff was unsuccessful in procuring her medical records directly from St. Thomas Emergent Services. (*See* AR 371–75.) At no time between July 31, 2017, and September 19, 2017, the deadline for requesting a subpoena from the ALJ, *see* § 416.1450(d)(2), does it appear that Plaintiff requested a subpoena, and she puts forth no "unusual, unexpected, or unavoidable circumstance beyond [her] control" that prevented her from making such request. 20 C.F.R. § 414.1435(b)(3). *See Ford*, 950 F.3d at 1158. In absence of any argument—or evidence—that Plaintiff's "circumstances [met] the conditions described in § 416.1435(b)" excusing her from requesting a subpoena from the ALJ within the time permitted, *see* § 416.1450(d)(2), the Court finds that there was no abuse of discretion by the ALJ in denying Plaintiff's post-hearing request for a subpoena. *See Ford*, 950 F.3d at 1158.

## V. CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ did not abuse his discretion and that his decision is supported by substantial evidence. Accordingly, the ALJ's decision is AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:     **February 1, 2021**                         /s/ *Sheila K. Oberto*                    
                                                UNITED STATES MAGISTRATE JUDGE